UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| MARIAH REED and HOMER PARRENT, as Administratrix of the Estate of King Messiah Chavez Walker, deceased child,<br><br>Plaintiffs,<br><br>v.<br><br>LOUISVILLE METRO GOVERNMENT, et al.,<br><br>Defendants. | Civil Action No. 3:18-CV-276-CHB<br><br>**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Mariah Reed and the administratrix of her deceased child's estate ("the Baby") sued Louisville Metro Government ("Louisville Metro"), Director Mark Bolton, and various medical personnel because of Ms. Reed's medical treatment while she was incarcerated at Louisville Metro Department of Corrections ("LMDC"). This matter is now before the Court on a Motion to Dismiss by Defendants Louisville Metro and Mark Bolton [R. 8]. Plaintiffs filed a response [R. 9], and Defendants filed their reply [R. 10]. Fully briefed, this matter is ripe for decision. For the reasons stated herein, the Court will grant in part and deny in part the Defendants' Motion.

**I.    Background**

For the purposes of considering Defendants' Motion, the following facts are taken as true. Ms. Reed was both incarcerated at LMDC and pregnant with her third child. [R. 1 at p. 9] In early 2017, Defendants took Ms. Reed to the hospital numerous times for treatment of lower abdominal cramping, pain, and vaginal bleeding. *Id.* When Ms. Reed was more than four months pregnant, in July 2017, Defendants again transported Ms. Reed to the hospital due to

vaginal bleeding and complaints of menstrual-like cramping. *Id.* The hospital discharged Ms. Reed back to LMDC's custody five days later. *Id.*

At 1:13 a.m. the next day, Ms. Reed complained of contractions and severe pain "all over." *Id.* Ms. Reed had a pulse rate of 104 beats per minute, and the fetus had a heartbeat of 152 beats per minute. *Id.* at p. 10. Four hours later, the nurse noted in Ms. Reed's chart that an advanced registered nurse practitioner had ordered that Ms. Reed be monitored. *Id.* At 10:30 a.m., another registered nurse prepared an emergency room referral form because Ms. Reed had passed a large blood clot, and her heart rate had risen to 145 beats per minute. *Id.* However, no ambulance was called until after noon, nearly two hours after the nurse completed the referral form. *Id.* In the ambulance ride to the hospital, Ms. Reed gave birth to her twenty-one-week-old baby. *Id.* Ms. Reed's baby died at the hospital hours later. *Id.*

Plaintiffs have asserted federal and state law claims against Louisville Metro and Mark Bolton, Director of LMDC, in his individual capacity. [R. 1] Both Defendants have moved to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6). [R. 8]

## II. Motion to Dismiss Standard

Dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(6) where the plaintiff "fails to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Iqbal*, 556 U.S. at 662 (citing *Twombly*, 550 U.S. at 555). In order to survive a Rule

12(b)(6) motion, the complaint must "contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The "complaint is viewed in the light most favorable to [the plaintiff]; the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [the plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

## III. Discussion

### A. Louisville Metro

As an initial matter, in their Response to Defendant's Motion to Dismiss, Plaintiffs agree that "Louisville Metro enjoys sovereign immunity from Plaintiffs' state claims." [R. 9 at p. 1] Accordingly, the Court will grant Defendants' Motion to Dismiss as to any state law claims asserted against Louisville Metro.

Plaintiffs also seek to hold Louisville Metro liable for the deprivation of Ms. Reed's and the Baby's constitutional rights pursuant to 42 U.S.C. § 1983. [R. 1 at p. 12] Louisville Metro argues that the claim should be dismissed, as the complaint fails to state a claim for municipal liability under § 1983. [R. 8-1 at pp. 7–9]

To state a claim against a municipal entity such as Louisville Metro, Plaintiffs must show that Louisville Metro committed some wrong. *See Doe v. Clairborne Cnty., Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996) ("[R]espondeat superior is not available as a theory of recovery under section 1983."). In order to establish municipal liability, the entity must perform the unconstitutional act pursuant to a governmental policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). The Sixth Circuit requires the plaintiff to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that

policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citations omitted).

Count I does seek to hold Louisville Metro liable for the "customs and practices of Defendants" that resulted in violations of Reed's constitutional rights [R. 1 at pp. 11–12] Plaintiffs vaguely suggest that these customs and practices were related to the training and supervision of staff. *Id.* at p. 9–10. However, the complaint is otherwise silent as to what those customs and practices are, why they were inadequate, and how they contributed to the violation of Ms. Reed's and the Baby's constitutional rights.

District courts in the Sixth Circuit have consistently required "more than bare statements" that a policy or custom caused the alleged constitutional violation to survive a motion to dismiss. *Phillips v. PTS of America, LLC*, No. 3:17-CV-603-JHM, 2017 WL 4582801, at *2 (W.D. Ky. Oct. 13, 2017) (quoting *Vidal v. Lexington Fayette Urban Cty. Gov't*, No. 5:13-CV-117-DCR, 2014 WL 4418113, at *3 (E.D. Ky. Sept. 8, 2014)). In *Vidal*, for example, Plaintiff alleged that a municipality "negligently trained and/or supervised" its employees, and that it "failed to instruct, supervise, control, and discipline" its employees. *Vidal*, 2014 WL 4418113, at *3. The district court found such allegations to be "naked assertions devoid of further factual enhancement [that] contribute nothing to the sufficiency of the complaint." *Id.* at *4. Plaintiff's complaint "merely recite[d] the legal requirements for a claim against a municipality without any factual allegations that would raise a right to relief above the speculative level." *Id.*

*Phillips* is also particularly instructive in resolving the § 1983 claim against Louisville Metro. In that case, an inmate at LMDC—Mr. Culpepper—complained of abdominal pain related to a bleeding ulcer. *Phillips*, 2017 WL 4582801, at *1. Medical staff at LMDC prescribed him antacids. *Id.* Mr. Culpepper was then placed on a thirteen-hour transport to

another facility, during which he continued to complain of abdominal pain. *Id.* When he arrived, he was "unable to exit the van and was barely responsive." *Id.* Mr. Culpepper lost consciousness and ultimately died from a "perforated duodenal ulcer." *Id.* The resulting lawsuit sought to hold Louisville Metro liable for LMDC's "written policies, procedures . . . customs and practices" that resulted in violations of Mr. Culpepper's constitutional rights. *Id.* at *2. However, the Plaintiff did not state what those policies or customs were. *Id.* The Plaintiff alleged nothing along the lines of what policies LMDC followed, why such policies were deficient, and how the policies caused the alleged constitutional violation. *Id.* As such, the complaint contained "no factual content upon which the Court could find that the plaintiffs [we]re plausibly entitled to relief." *Id.*

Plaintiffs' complaint suffers from the same shortcomings described in these cases. The complaint merely states that Louisville Metro has "written policies, procedures and protocols at LMDC with terms that clearly embraced Ms. Reed's and the Baby's obviously serious, emergent medical conditions." [R. 1 at p. 11] Plaintiffs further allege that:

> [T]he treatment of Ms. Reed and the Baby by Defendants was the result of customs and practices of Defendants that were contrary to or expressly violated written policies, procedures and protocols of Correct Care and/or the Jail, and that such customs and practices were the "moving force" behind Ms. Reed's injury and the death of the Baby.

*Id.* These bare assertions, which completely lack any additional factual development, contribute nothing to the sufficiency of the complaint. *Twombly*, 550 U.S. at 555. Indeed, this Court has previously rejected a nearly identical allegation because it "failed to identify the policy, custom, or practice" which caused the constitutional violation. *Blaine v. Louisville Metro Gov't*, No. 3:13-CV-427-CRS, 2014 WL 321142, at *3 (W.D. Ky. Jan. 29, 2014). Ms. Reed's complaint merely recites the legal requirements for a claim against a municipality without any factual allegations that would "raise a right to relief above the speculative level." *Id.* Under this pleading standard, the complaint fails to state a claim for municipal liability under § 1983.

Therefore, Defendants' Motion to Dismiss Count I as it applies to Louisville Metro is **GRANTED**.

B.  **Director Bolton**

Plaintiffs assert four claims against Director Bolton. Count I seeks to hold Bolton liable pursuant to § 1983 for violations of Reed's and the Baby's constitutional rights, while Count II asserts a state law claim of negligence. [R. 1 at pp. 11–12] Count III asserts a claim for wrongful death. *Id.* at p. 12. Count IV asserts a claim for the loss of the Baby's love, society, and companionship Ms. Reed would have enjoyed had the Baby lived. *Id.*

Bolton seeks dismissal of the § 1983 claim, as Plaintiffs have failed to plausibly allege a claim for which relief can be granted. [R. 8-1] Bolton seeks dismissal of the three state law claims on the grounds of qualified immunity. *Id.* The Court will discuss each in turn.

1.  **§ 1983**

First, Plaintiffs allege that Bolton violated Ms. Reed's and the Baby's rights under the Eighth and Fourteenth Amendments because he was deliberately indifferent to Ms. Reed's and the Baby's medical needs while Ms. Reed was a pre-trial detainee. [R. 1 at pp. 11–12]

A claim for deliberate indifference to medical needs must plead facts that demonstrate two elements:

> [A] plaintiff must satisfy an objective component and a subjective component. The objective component is satisfied by showing a sufficiently serious condition that denial of needed medical care would result in the unnecessary and wanton infliction of pain or pose a substantial risk of serious harm. To satisfy the subjective component, a plaintiff must allege and ultimately prove that the defendant was aware of facts from which the inference could be drawn that a substantial risk of harm would exist if needed care were not provided, that the defendant actually drew the inference, and that the defendant acted in disregard of that risk.

*Amick v. Ohio Dep. of Rehab. & Corr.*, 521 F. App'x 354, 358 (6th Cir. 2013) (internal citations omitted). Defendants do not contest that Ms. Reed alleged a sufficiently serious medical need.

Rather, Defendants only argue that the complaint fails to adequately plead facts that establish the subjective component because Plaintiffs do not allege that Bolton was even aware of Ms. Reed's medical problems or the substantial risk posed by the issues. Defendants argue that "[t]here are no assertions that . . . Bolton had any direct knowledge of Reed's medical problems," nor could Bolton have "drawn any inference that Reed had a serious medical need." [R. 8-1 at p. 5]

Indeed, Plaintiffs' complaint does not allege any factual content to link Bolton to the incidents at issue. The Plaintiffs only mention Bolton's name five times in the entire body of the complaint, and none of those references allege action, knowledge, or acquiescence of Bolton. By contrast, the Plaintiff in *Phillips* at least alleged that "Bolton . . . surrendered custody" of Mr. Culpepper, which the Court found that, at a bare minimum, "establishe[d] that Bolton was physically present and made the decision to surrender custody of Culpepper." *Phillips*, 2017 WL 4582801, at *3. In their Response, Plaintiffs request "the opportunity to determine" Bolton's involvement through discovery. [R. 9 at p. 4] However, Plaintiffs' formulaic recitations fail to state a claim for § 1983 liability with respect to Bolton. *Twombly*, 550 U.S. at 555.

In their complaint, Plaintiffs appear to also claim that deliberate indifference arose from Bolton's alleged failure to adequately train and supervise his staff. [R. 1 at p. 8] However, in their Response, Plaintiffs "agree" with Defendants that Bolton has neither "liability in this case under the doctrine of *respondeat superior*" nor "individual liability for failure to train." [R. 9 at p. 1] As such, the Court will dismiss any failure to train or respondeat superior claims against Director Bolton.

Therefore, Defendants' Motion to Dismiss Count I as it applies to Director Bolton is **GRANTED.**

### 2. State Law Claims

Bolton has also moved to dismiss Plaintiffs' state law claims for negligence, wrongful death, and loss of companionship on qualified immunity grounds. [R. 8-1] Under Kentucky law,

> "[q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment . . . ; (2) in good faith; and (3) within the scope of the employee's authority."

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

Bolton first argues that the act of supervising employees is discretionary. [R. 8-1 at p. 11] However, determining whether a particular act is discretionary or ministerial is "inherently fact-sensitive." *Hedgepath, v. Pelphrey*, 520 F. App'x 385, 389 (6th Cir. 2013) (citing *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010)). For instance, "the supervision of employees is a ministerial act when it merely involve[s] enforcing known policies." *Hedgepath*, 520 F. App'x at 391 (citing *Yanero*, 65 S.W.3d at 529). As such, without the development of a sufficient factual record, the Court cannot determine if Bolton's acts were discretionary or ministerial. Furthermore, because of the fact-intensive nature of the qualified immunity defense, it is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015). Qualified immunity is a threshold question to be resolved at the earliest possible point, but that point is usually summary judgment and not dismissal under Rule 12. *Id.* (internal citations omitted).

Bolton also argues that there are no allegations in the complaint that he acted in bad faith. [R. 8-1 at p. 12] The complaint does state that Bolton's "conduct was intentional and grossly negligent, indicated active malice towards Ms. Reed and the Baby, and a total, deliberate and reckless disregard for and indifference to their lives and to their constitutional and common law rights . . ." [R. 1 at pp. 8–9] The Court in *Phillips* cited approvingly nearly identical language as

"adequately alleg[ing]" bad faith with respect to Bolton. *Phillips*, 2017 WL 4582801, at *4. In that case, the Court did have the additional allegation that Bolton was involved in the decision to surrender custody of the inmate. *Id.* In any event, because of the fact-intensive nature of the analysis, the Court cannot at this time determine if Bolton is entitled to qualified immunity. *See Jenkins Ind. Schs. v. Doe*, 379 S.W.3d 808, 812 (Ky. Ct. App. 2012) (refusing to determine whether defendants acted in bad faith before development of sufficient factual record).

Therefore, Defendants' Motion to Dismiss the state law claims as they apply to Director Bolton is **DENIED**.

## IV. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** as follows:

1. The Court will **GRANT** Defendants' Motion to Dismiss [R. 8] any state law claims asserted against Louisville Metro.

2. The Court will **GRANT** Defendants' Motion to Dismiss [R. 8] Count I as it applies to Louisville Metro.

3. The Court will **GRANT** Defendants' Motion to Dismiss [R. 8] Count I as it applies to Director Bolton.

4. The Court will **DENY** Defendants' Motion to Dismiss [R. 8] the state law claims as they apply to Director Bolton.

This the 27th day of September, 2019.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY